IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON CARBALLO, | No. C-13-5572 MMC |
| Plaintiff, | **ORDER DENYING COMMUNICATION WORKERS OF AMERICA'S MOTION TO DISMISS** |
| v. | |
| COMCAST INC., | |
| Defendants. | |

Before the Court is defendant Communication Workers of America's ("CWA") "Motion to Dismiss Plaintiff's First Amended Complaint," filed November 10, 2014. Plaintiff Nelson Carballo has filed opposition, to which CWA has replied.[1] Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

**BACKGROUND**

In his First Amended Complaint ("FAC"), plaintiff alleges he was formerly employed by Comcast, Inc. ("Comcast") for sixteen years, ultimately attaining the position of Network

---

[1] CWA failed to provide the Court with a chambers copy of its reply. Nonetheless, the Court has considered it. For future reference, CWA is reminded that, pursuant to Civil Local Rule 5-1(e)(7) and the Court's Standing Orders, parties are required to provide for use in chambers one paper copy of each document that is filed electronically.

[2] By order filed December 17, 2014, the Court took the matter under submission.

Technician. (See FAC ¶ 8.) Plaintiff alleges he has "suffered from a foot condition known as gout since 2006," which condition causes "intermittent periods of intense pain that his medication cannot combat." (See FAC ¶ 9.) Plaintiff further alleges he informed his "direct supervisor that he suffered from gout multiple times during his employment with Comcast and requested accommodation in his System Network Technician position on several occasions throughout the year of 2012" (see id.), and that Comcast "accommodated [p]laintiff when [p]laintiff complained of pain due to his condition by allowing [p]laintiff to work on underground cable" (see FAC ¶ 11). Nevertheless, plaintiff alleges, on December 3, 2012, when he was assigned duties that would require him to "climb cable poles using an aerial lift" and he informed his "direct supervisor" he was "suffering from an episode of gout that morning" that would make performance of his assigned duties "difficult," his supervisor "failed to accommodate [p]laintiff" and instead told plaintiff "to 'do his best'." (See id.) Plaintiff alleges that, later that same day, while in the process of securing himself to a pole, plaintiff "loosen[ed] the straps [around his legs] to mitigate the pain he was feeling due to gout," and his supervisor "noticed that [p]laintiff's leg straps were unsecured in violation of company policy." (See id.) Thereafter, according to plaintiff, Comcast conducted an investigation that culminated in the issuance of a notice of termination of plaintiff's employment for "repeat safety violations." (See FAC ¶ 12; Ex. B.)[3]

By the FAC, plaintiff brings a number of causes of action alleging discrimination by Comcast[4] as well as a cause of action against CWA, specifically, the First Cause of Action, titled "Breach of Duty of Fair Representation." In support of his claim against CWA, plaintiff alleges that CWA, the "exclusive bargaining agent" under the applicable collective bargaining agreement, pursued through "Step Two of the grievance procedure" a grievance in which it asserted Comcast lacked "just cause" to terminate plaintiff (see FAC ¶ 18-19;

---

[3] In its notice of termination, Comcast cited a prior incident in August 2012, when, according to Comcast, plaintiff had not worn "his harness while performing aerial work." (See FAC Ex. B.)

[4] Comcast has filed an answer to the FAC.

2

1  Ex. C), but then made a "decision not to pursue [p]laintiff's grievance" to arbitration (see
2  FAC ¶ 20).  Plaintiff alleges he appealed that determination to CWA's Vice President, who,
3  in a written decision, stated he was "not recommending further action" on the grievance.
4  (See FAC ¶ 20(D); Ex. J, second document.)
5      Plaintiff alleges he thereafter retained counsel and, through counsel, appealed the
6  Vice President's decision to CWA's President, who subsequently denied the appeal in
7  writing (see FAC ¶¶ 20(A), 20(C); Ex. J, first document; Ex. K), after which plaintiff's
8  counsel appealed the President's decision to CWA's Executive Board (see FAC ¶ 20(C);
9  Ex. M), which board, in turn, "upheld" the President's decision in writing and informed
10 plaintiff he had "exhausted [his] internal appeals and there [was] no further action to be
11 taken" (see FAC ¶ 20(C); Ex. F).

## LEGAL STANDARD

13      Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based
14 on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a
15 cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
16 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim
17 showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.
18 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by
19 a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.
20 Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief
21 requires more than labels and conclusions, and a formulaic recitation of the elements of a
22 cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).
23      In analyzing a motion to dismiss, a district court must accept as true all material
24 allegations in the complaint, and construe them in the light most favorable to the
25 nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To
26 survive a motion to dismiss, a complaint must contain sufficient factual material, accepted
27 as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.
28 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## DISCUSSION

By the instant motion, CWA argues plaintiff has failed to allege sufficient facts to support a claim that CWA breached its duty of fair representation.

Where a union is the "exclusive bargaining representative of the employees in [a] bargaining unit," the union has a duty to "fairly represent all of those employees, both in its collective bargaining with [the employer], . . . and in its enforcement of the resulting collective bargaining agreement." See Vaca v. Sipes, 386 U.S. 171, 177 (1967). "A union breaches this duty only when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith'." Moore v. Bechtel Power Corp., 840 F.2d 634, 636 (9th Cir. 1988) (quoting Vaca, 386 U.S. at 190). Where the challenged union conduct "constitutes an exercise of judgment," the plaintiff must show the union "exercised its judgment in bad faith or in a discriminatory manner." See Beck v. United Food & Commercial Workers Union, Local 99, 506 F.3d 874, 879-80 (9th Cir. 2007). "Bad faith" consists of "fraud, deceitful action or dishonest conduct." See id. at 880.

Here, plaintiff alleges the Vice President's determination not to recommend pursuing plaintiff's grievance was in "bad faith" (see FAC ¶ 20(D)), and that the President's denial of plaintiff's appeal was "in bad faith and in retaliation for [plaintiff's] obtaining legal counsel" (see FAC ¶¶ 20(A), 20(C)). Specifically, plaintiff alleges the reasoning set forth in each of those determinations was premised on "lies" (see FAC ¶¶ 20(A), 20(C), 20(D)), i.e., "deceitful action or dishonest conduct," see Beck, 506 F.3d at 880.

The Court previously addressed the adequacy of plaintiff's claim against CWA, when it considered CWA's motion to dismiss plaintiff's initial complaint. In said motion, CWA argued, and the Court found at a hearing conducted October 10, 2014, the initial complaint did not include sufficient facts to support plaintiff's allegation therein that CWA had provided "false and malicious reasons" (see Compl., filed December 3, 2013, ¶ 19(A)), for its refusal to pursue the grievance. Thereafter, plaintiff, with leave of court, filed the FAC and included additional factual allegations pertaining to CWA.

//

4

By the instant motion, CWA contends plaintiff has not cured the deficiency previously identified by the Court.  The Court disagrees.

First, with respect to the Vice President's decision, plaintiff identifies the alleged "lie" as the Vice President's statement that "[t]here are no mitigating facts."  (See FAC ¶ 20(D); Ex. J, second document.)  The record, which the Vice President stated he had reviewed prior to writing his decision (see FAC Ex. J, second document), however, indicates that at the first two steps of the grievance procedure, CWA had taken the position that a "mitigating factor" existed, specifically, that plaintiff's "gout had flared up and the straps caused him pain when the leg straps were attached properly" (see FAC Ex. C at 3-4). Such allegations are sufficient to provide the factual basis for plaintiff's allegation that the Vice President "lied" when he stated that no mitigating fact existed.

Second, with respect to the President's decision, plaintiff identifies the "lie" as the President's statement that "[t]here is nothing in the record to indicate that [plaintiff] informed Comcast about [his] condition or that [plaintiff] requested accommodation."  (See FAC ¶ 20(B), Ex. K at 2.)  According to plaintiff, however, on March 3, 2013, he completed a CWA form titled "Aggrieved's Statement," in which he represented to CWA he had informed his Comcast supervisor on the morning of December 3, 2012 that he "had gout, but [he] was going to try to finish [his] work day."  (See FAC Ex. L at 1.)[5]  Plaintiff also alleges that Shop Steward Joel Sawicki ("Sawicki") was present during a meeting conducted December 4, 2012, prior to the December 10, 2012 termination, at which meeting plaintiff "reminded"[6] Comcast as well as Sawicki "about his medical condition" (see FAC ¶ 12), and that CWA thereafter acknowledged, in a document titled "Top Level

---

[5] Given that plaintiff completed the Aggrieved's Statement on March 3, 2013 (see FAC Ex. L), and that March 8, 2013 was the deadline for CWA to notify Comcast if it intended to arbitrate the grievance (see FAC Ex. C at 1), it appears the purpose of the form was to assist CWA in determining whether to continue to pursue the grievance.

[6] Plaintiff alleges Sawicki, as well as other union officials, was aware, prior to December 3, 2012, that "Comcast had in the past accommodated [p]laintiff when [p]laintiff complained of pain due to his condition by allowing [p]laintiff to work on underground cable."  (See FAC ¶ 11.)

5

Grievance Referral" written during an early stage of the grievance process, that plaintiff, at said meeting, had explained to Comcast that "his leg straps were not properly attached because his gout was causing him more pain with the straps attached" (see FAC Ex. C at 3). Such allegations are sufficient to provide the factual basis for plaintiff's allegation that the President "lied" when he stated plaintiff had never informed Comcast about his condition and had never requested an accommodation.

## CONCLUSION

For the reasons stated above, CWA's motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated: January 7, 2015

MAXINE M. CHESNEY
United States District Judge