United States District Court

For the Northern District of California

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   NELSON CARBALLO,                      No. C-13-5572 MMC

11              Plaintiff,                 **ORDER GRANTING DEFENDANT
                                           COMCAST, INC.'S MOTION FOR**
12        v.                               **SUMMARY JUDGMENT**

13   COMCAST INC.,

14              Defendants.
     _____/

15

16        Before the Court is defendant Comcast, Inc.'s ("Comcast") Motion for Summary

17   Judgment or in the Alternative, Summary Adjudication, filed July 17, 2015.  Plaintiff Nelson

18   Carballo ("Carballo") has filed opposition, to which Comcast has replied.[1]  Having read and

19   considered the papers filed in support of and in opposition to the motion, the Court hereby

20   rules as follows.[2]

21                              **BACKGROUND**

22        In the operative complaint, the First Amended Complaint ("FAC"), Carballo alleges

23   he was formerly employed by Comcast for sixteen years, ultimately attaining the position of

24   Network Technician (see FAC ¶ 8), also called a System Technician (see FAC Ex. A).

25   Carballo alleges he has "suffered from a foot condition known as gout since 2006," which

26   _____

27        [1]Defendant Communication Workers of America's ("CWA") has filed a notice of
     joinder in Comcast's motion, which joinder the Court has addressed by separate order filed
28   concurrently herewith.

          [2]By order filed August 18, 2015, the Court took the matter under submission.

1    condition causes "intermittent periods of intense pain that his medication cannot combat."

2    (See FAC ¶ 9.)  Carballo further alleges that, on December 3, 2012, when he was

3    assigned duties that would require him to "climb cable poles using an aerial lift," he

4    informed his "direct supervisor" he was "suffering from an episode of gout that morning,"

5    after which his supervisor did not "accommodat[e]" him and instead told him "to 'do his

6    best'."  (See FAC ¶ 11.)  Carballo alleges that, later the same day, while securing himself to

7    a pole, he "loosen[ed] the straps [around his legs] to mitigate the pain he was feeling due to

8    gout," and his supervisor "noticed that [his] leg straps were unsecured in violation of

9    company policy."  (See id.)  Thereafter, according to Carballo, Comcast conducted an

10    investigation that culminated in the issuance of a notice of termination of Carballo's

11    employment for "repeat safety violations."  (See FAC ¶ 12; Ex. B.)[3]

12          Based on the above allegations, Carballo asserts eight causes of action against

13    Comcast.[4]  Specifically, Carballo alleges Comcast violated the Fair Employment and

14    Housing Act ("FEHA"), Cal. Gov't Code § 12940, by terminating his employment on account

15    of his disability (Second Cause of Action), violated FEHA by failing to reasonably

16    accommodate his disability (Third Cause of Action), violated FEHA by failing to engage in

17    an interactive process to determine a reasonable accommodation (Fourth Cause of

18    Action), violated FEHA by failing to prevent discrimination (Fifth Cause of Action), violated

19    FEHA by terminating his employment in retaliation for his having engaged in protected

20    activity (Sixth Cause of Action), violated FEHA by terminating his employment on account

21    of his national origin (Seventh Cause of Action), violated FEHA by terminating his

22    employment on account of his race (Eighth Cause of Action), and violated public policy by

23    terminating his employment in violation of the policies embodied in FEHA (Ninth Cause of

24    Action).

25

26          [3]In its notice of termination, Comcast cited a prior incident in August 2012, when

27    Carballo had not worn "his harness while performing aerial work."  (See FAC Ex. B.)

28          [4]The FAC consists of nine causes of action, the first of which is only alleged against
defendant Communication Workers of America.

1

**LEGAL STANDARD**

2          Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant

3    summary judgment if the movant shows that there is no genuine issue as to any material

4    fact and that the movant is entitled to judgment as a matter of law."  <u>See</u> Fed. R. Civ. P.

5    56(a).

6          The Supreme Court's 1986 "trilogy" of <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986),

7    <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), and <u>Matsushita Electric Industrial Co.</u>

8    <u>v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986), requires that a party seeking summary

9    judgment show the absence of a genuine issue of material fact.  Once the moving party

10   has done so, the nonmoving party must "go beyond the pleadings and by [its] own

11   affidavits, or by the depositions, answers to interrogatories, and admissions on file,

12   designate specific facts showing that there is a genuine issue for trial."  <u>See</u> <u>Celotex</u>, 477

13   U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

14   its burden under Rule 56[ ], its opponent must do more than simply show that there is some

15   metaphysical doubt as to the material facts."  <u>Matsushita</u>, 475 U.S. at 586.  "If the

16   [opposing party's] evidence is merely colorable, or is not significantly probative, summary

17   judgment may be granted."  <u>Liberty Lobby</u>, 477 U.S. at 249-50 (citations omitted).

18   "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

19   most favorable to the party opposing the motion."  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587

20   (internal quotation and citation omitted).

21

**DISCUSSION**

22         Comcast argues it is entitled to summary judgment on each of the eight causes of

23   action alleged against it in the FAC.

24         The Court discussed below each cause of action in turn, beginning with the two

25   causes of action that are based on Comcast's conduct during the course of Carballo's

26   employment, after which the Court addresses the six causes of action that are based on his

27   termination.

28   //

3

1

**A.  Failure to Accommodate**

2      In the Third Cause of Action, Carballo alleges Comcast violated FEHA by failing to

3   accommodate him on December 3, 2012, when Comcast "requir[ed] [him] to operate an

4   aerial lift while he was experiencing extreme pain and discomfort due to his disability."

5   (See FAC ¶ 11.)  Carballo alleges that Comcast, rather than giving him an assignment

6   requiring aerial work, should have assigned him to "work[ ] on underground cable" or

7   "reassign[ed] [him] to another position at Comcast."  (See FAC ¶¶ 11, 31.)

8      Comcast asserts it is undisputed that Comcast provided Carballo with a reasonable

9   accommodation, specifically, allowing him to take off up to five days each month when his

10   gout precluded him from working, and that Comcast is entitled to summary judgment

11   because Carballo did not avail himself of such accommodation on December 3, 2012, and

12   Comcast was not required to provide either of the two alternative accommodations

13   identified in the FAC.

14      **1.  Relevant Facts**[5]

15      Carballo's position of System Technician "required [him] to perform routine

16   maintenance and repair of Comcast's distribution systems and troubleshoot Comcast's

17   equipment and power failures."  (See Carballo Decl. ¶ 3.)

18      Carballo has suffered from gout since 2006.  (See Carballo Dep. at 102:16-19.)[6]  As

19   described by Carballo's treating physician, Syed Anwar Qadri, M.D. ("Dr. Qadri"), "[g]out is

20   a condition in which the uric acid level in the blood goes high and precipitating the joint, and

21   they start an inflammation of the joint causing pain and swelling of the respective joint."

22   (See Qadri Dep. at 16:9-23, 18:1-4.)[7]  Although Carballo has "experienced attacks of gout

23

24      [5]The following facts are undisputed, or, to the extent disputed, are stated in the light
     most favorable to Carballo.
25

26      [6]Excerpts from Carballo's deposition are filed as Exhibits A, B, and C to the
     Declaration of Troy A. Valdez, and as Exhibits A, B, and C to the Declaration of Daniel Ray
27   Bacon.

28      [7]Excerpts from Dr. Qadri's deposition are filed as Exhibit D to the Declaration of Troy
     A. Valdez, and as Exhibit D to the Declaration of Daniel Ray Bacon.

1    in [his] knees and elbows," the "majority of attacks" have been "in the joints of [his] feet."

2    (See Carballo Decl. ¶ 6.)  When the pain is "particularly severe," Carballo is "sometimes

3    unable to walk, climb, engage in heavy lifting, and sleep."  (See id.)

4        After one of his supervisors informed Carballo about the possibility of obtaining leave

5    under the Family and Medical Leave Act ("FMLA"), Carballo called the telephone number

6    the supervisor provided and was advised to have his physician complete a form, which

7    Comcast subsequently provided to Carballo for that purpose.  (See Carballo Dep. at 111:4-

8    14, 298:2-20.)  Thereafter, Dr. Qadri, on February 16, 2011, and December 19, 2011,

9    respectively, completed the form, titled "Certificate of Health Care Provider for Family

10   Leave" ("Certificate"), in each instance opining therein that Carballo "ha[d] a serious chronic

11   health condition that require[d] intermittent time off" and, specifically, that "[p]eriods of

12   incapacitation are likely to occur . . . 1-4 days" each month.  (See Qadri Dep. Ex. 16

13   (COM000966), Ex. 17 (COM000968).)  The following year, on September 24, 2012, Dr.

14   Qadri submitted a revised Certificate, in which he opined that "[p]eriods of incapacitation

15   are likely to occur . . . 3-5 days" each month.  (See id. Ex. 18 (COM001041).)[8]  On each

16   Certificate, Dr. Qadri left blank the portion in which a physician could identify job

17   "restrictions" (see id. Exs. 16-18), as it was Dr. Qadri's opinion that Carballo should take

18   days off work when he experienced "acute attacks" of gout, rather than have his job duties

19   modified (see id. at 58:13-17, 59:4-8).

20       Having received the Certificates from Dr. Qadri, Comcast allowed Carballo to take

21   days off work, initially up to four days each month as first requested by Dr. Qadri, and,

22   beginning in August 2012, up to five days each month.  (See Carballo Dep. at 109:18-22,

23   297:10-22.)  Carballo determined when he needed to take time off (see id. at 110:17-20),

24   and chose to take leave "when [he] was totally incapacitated, experiencing pain in the

25   range of nine to ten" (see Carballo Decl. ¶ 13).  When he decided to take leave, he used a

26   "self-service portal" in which he entered a specified "code," to inform Comcast he was

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28       [8]The "serious chronic health condition" to which Dr. Qadri refers in each Certificate is
     gout.  (See id. at 54:6-8.)

1   taking the day off (see Carballo Dep. at 109:18 - 110:23, 303:19-24) without "repercussion"

2   as to his job (see id. at 112:21-23).  Carballo "estimates" that, during 2012, he took "less

3   than 20 days" of leave.  (See Carballo Decl. ¶ 13.)  On some occasions when he had "an

4   acute attack of gout," but "was still capable of performing [his] duties as a System

5   Technician," his "managers would . . . allow [him] to work on Comcast's underground cable

6   systems which did not require [him] to perform the tasks associated with aerial work such

7   as balancing on aerial lifts, engaging in heavy lifting, carrying ladders, and climbing poles."

8   (See id. ¶ 14.)[9]  Because Carballo's "gout attacks were episodic," however, he could, "on

9   most days," perform "all of [his] System Technician duties."  (See id. ¶ 17.)

10          On December 3, 2012, although he had FMLA leave available, Carballo chose not to

11  take the day off work as his pain was "maybe" at the "2 to 3" level.  (See Carballo Dep.

12  175:17 - 176:11, 183:10-16.)  Upon his arrival at the office, he told his supervisor, Will

13  Chandler ("Chandler"), that he was "getting . . . some pain."  (See id. at 176:8-11, 183:5-7.)

14  When Chandler asked Carballo if "he felt well enough to perform his job or if he needed to

15  go home" (see Chandler Dep. at 49:25 - 50:4),[10] Carballo responded, "Oh, I can do it.  I'll

16  just go ahead."  (See Carballo Dep. at 183:20-25; see also Chandler Dep. at 50:6-8

17  (testifying "I believe he said, 'I can -- I can work today.'").  Thereafter, Chandler told the

18  "whole group" that "there were a lot of outages" and "there was more than 15 outages," and

19  Carballo was assigned to work in South San Francisco.  (See Carballo Dep. at 178:16 -

20  179:4; 180:2-3; 182:1-3, 10-12.)  When Chandler told Carballo that his assignments "would

21  likely require [him] to ascend poles or strap [himself] into a harness in an aerial lift" (see

22  Carballo Decl. ¶ 22), Carballo responded, "I told you that I'm suffering from the pain right

23  now" (see Carballo Dep. at 184:3-7).  Chandler replied, "Okay, Nelson.  You know there's a

24  lot of outages, and we need you here, and go and do the best you can."  (See id. at 184:9-

25

26          [9]According to Carballo, "[w]orking at underground locations required [him] to perform
    troubleshooting functions primarily on [his] stomach or [his] knees which [he] was capable
27  of doing when [he] had gout."  (See id.)

28          [10]Excerpts from Chandler's deposition are filed as Exhibit G to the Declaration of
    Troy A. Valdez.

1   11.)  Carballo did not, at any time, tell Chandler he would be unable to perform aerial work

2   nor did he ask to go home.  (See id. at 185:8-21, 309:18-24).[11]

3       Carballo left the office, and, as he traveled to the assigned location, "the pain in [his]

4   feet grew stronger."  (See Carballo Decl. ¶ 25.)  When he "arrived at [the] outage," he

5   "attached all of [his] safety gear, and ascended a cable pole using [an] aerial lift."  (See id.)

6   As he "tightened the legs straps that wrapped around [his] legs, [he] immediately felt

7   severe pain and pressure in [his] legs."  (See id.)  He then loosened the straps, which came

8   loose.  (See id. ¶ 26.)  He realized the leg straps had come loose "[o]nce [he] was in the

9   bucket [truck]."  (See Carballo Dep. at 189:20-23.)

10      Chandler, who had arrived at the scene of the outage, saw Carballo working without

11   his leg straps attached.  (See Carballo Decl. ¶¶ 27, 29; Carballo Dep. at 199:12-18.)

12   Thereafter, as discussed in more detail below, Comcast terminated Carballo's

13   employment.

14      **2. Legal Analysis**

15      Pursuant to FEHA, it is unlawful for an employer "to fail to make reasonable

16   accommodation for the known physical or mental disability of an applicant or employee."

17   See Cal. Gov't Code § 12940(m).  "The elements of a reasonable accommodation cause of

18   action are (1) the employee suffered a disability, (2) the employee could perform the

19   essential functions of the job with reasonable accommodation, and (3) the employer failed

20   to reasonably accommodate the employee's disability."  Nealy v. City of Santa Monica, 234

21   Cal. App. 4th 359, 373 (2015).

22      "A reasonable accommodation is a modification or adjustment to the work

23   environment that enables the employee to perform the essential functions of the job he or

24   she holds or desires."  Id.  "[E]xamples of reasonable accommodations . . . include

25

26      [11]Although, upon receiving his assignment, Carballo, as noted above, did tell
     Chandler his gout was causing him pain, it was his practice to work unless his pain was at
27   the higher levels (see Carballo Decl. ¶ 13), and, indeed, the earlier conversation to which
     he referred was one in which he said he could perform his job (see Chandler Dep. at 50:6-
28   8) despite having "some pain" (see Carballo Dep. at 176:8-11).

reallocating nonessential functions or modifying how or when an employee performs an essential function, but not eliminating essential functions altogether." Id. at 375. "A finite leave of absence [also] may be a reasonable accommodation to allow an employee time to recover . . . ." Id. at 377. "Reasonable accommodation may also include reassignment to a vacant position if the employee cannot perform the essential functions of his or her position even with accommodation." Id. (internal quotation and citation omitted).

Here, as discussed above, it is undisputed that Comcast did provide Carballo with an accommodation on December 3, 2012, specifically, the ability to take the day off if he so chose, and that Carballo did not avail himself of such accommodation. In light of such undisputed facts, to prevail on his claim, Carballo necessarily must offer evidence to establish that the accommodation he was provided was not reasonable. See Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (2000) (holding employer can prevail on summary judgment on claim for failure to accommodate where it is undisputed that "reasonable accommodation was offered and refused").

In that respect, Carballo relies on the following California regulation, which sets forth the circumstances under which affording a leave of absence constitutes a reasonable accommodation:

> When the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery, holding a job open for an employee on a leave of absence or extending a leave . . . may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation, and does not create an undue hardship for the employer. When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence. An employer, however, is not required to provide an indefinite leave of absence as a reasonable accommodation.

See Cal. Code Regs., tit. 2, § 11068(c).

Carballo argues that, on December 3, 2012, he could have worked with a "reasonable accommodation other than a leave of absence," see id., and, consequently, that Comcast cannot rely on its having made a leave of absence available to Carballo on that date. Specifically, Carballo asserts that Comcast could have provided him with

1   assignments that did not require aerial work, such as allowing him to work at underground

2   locations, or could have reassigned him to a different position.

3   The Court next considers whether a triable issue of facts exists as to whether either

4   of the proposed accommodations would have been "reasonable."  See id.

5   **a. Non-Aerial Work**

6   Carballo argues that Comcast could have modified his duties to eliminate

7   performance of aerial work.  Limiting Carballo to non-aerial work can be deemed a

8   reasonable accommodation only if performing aerial work is a non-essential function of the

9   position of System Technician.  See Nealy, 234 Cal. App. 4th at 375 (holding "elimination of

10  an essential function is not a reasonable accommodation").  Carballo, however, fails to offer

11  any evidence to support such a finding.  Rather, as Comcast has shown, it is undisputed

12  that performing aerial work is an essential function of the position.

13  The written job description for System Technician identifies the ability to "climb[ ]

14  poles, ladders, towers and other structures as needed" as an "essential function" of the

15  position (see Carballo Decl. Ex. 1), and, at his deposition, Carballo testified the written job

16  description accurately identifies the essential functions of his position (see Carballo Dep. at

17  99:11 - 100:5).  Additionally, at his deposition, Carballo repeatedly confirmed that

18  performing aerial work is an essential function of the position.  (See id. at 135:25 - 136:4

19  (agreeing that "to be able to fully do the system network technician job, [he] had to be able

20  to do both underground and . . . overhead [work]"), 141:14-18 (agreeing that "being able to

21  actually get into a bucket truck and get up on the poles and . . . get up into the air [was] an

22  essential function [of] the job"), 167:22 - 168:2 (agreeing that "the ability to climb poles,

23  ladders, towers, and other structures as needed was an essential function of [his]

24  position").)  As Carballo explained at his deposition, when a System Technician responds

25  to an outage, he may need to work underground or aerially, or both, depending on the

26  location of the outage.  (See id. at 132:24 - 133:3 (testifying, with respect to outages,

27  "sometimes it's just overhead, sometimes underground, and sometimes it's both").)

28  Carballo contends that assigning him to non-aerial work nonetheless would have

9

1  constituted a reasonable accommodation because, on various dates prior to December 3,

2  2012, "when [he] desired to work through a gout attack rather than stay home," his

3  managers assigned him "work underground or in the office."  (See Pl.'s Opp. at 16:12-15.)

4  The issue, however, is whether Comcast was required by FEHA to assign Carballo only

5  tasks requiring no aerial work, i.e., whether performing aerial work is a non-essential

6  function.  As noted above, Carballo offers no such evidence, and, indeed, repeatedly

7  conceded at his deposition that performing aerial work is an essential function of the

8  System Technician position.[12]

9       Carballo, noting that a reasonable accommodation can consist of "permitting an

10 alteration of when . . . an essential function is performed," see Nealy, 234 Cal. App. 4th at

11 374, also argues that limiting his assignments to non-aerial work during episodes of gout

12 would simply change "when" he performs aerial work.  Given the nature of the position

13 here at issue, however, which, as a practical matter, requires resolution of an outage as

14 quickly as possible, Carballo's proposed accommodation would effectively eliminate an

15 essential function of Carballo's job and shift the performance thereof to other employees,

16 an accommodation an employer is not obligated to make.  See Dark v. Curry County, 451

17 F.3d 1079, 1089 (9th Cir. 2006) (holding employer not required "to exempt an employee

18 from performing essential functions or to reallocate essential functions to other

19 employees").

20       **b. Reassignment**

21       Carballo next argues that a reasonable accommodation would have been to

22 reassign him to another position at Comcast.  As set forth above, "[r]easonable

23 accommodation may also include reassignment to a vacant position if the employee cannot

24 perform the essential functions of his or her position even with accommodation."  See

25 Nealy, 234 Cal. App. 4th at 377.  Here, however, reassignment would not have been a

26

27       [12]Carballo cites to no authority holding or suggesting that if an employer provides an
accommodation beyond that required by FEHA, the employer is required to continue to
28 provide such accommodation.

10

1   reasonable accommodation, as it is undisputed that Comcast was able to accommodate

2   Carballo in a manner that allowed him to perform the essential functions of his position,

3   specifically, by affording him a leave of absence on the days on which he needed to

4   recover from an episode of gout.

5       **3.  Conclusion**

6       Accordingly, (a) Comcast having shown it is undisputed that it provided Carballo with

7   a reasonable accommodation, namely, the ability to take a leave of absence on December

8   3, 2012, and that Carballo did not avail himself of such reasonable accommodation, and (b)

9   Carballo having failed to show a triable issue of fact exists as to whether he could perform

10  the essential functions of his job with a different reasonable accommodation, Comcast is

11  entitled to summary judgment on the Third Cause of Action.

12  **B.  Failure to Engage in Interactive Process**

13      In the Fourth Cause of Action, Carballo alleges that when Comcast "determined that

14  [Carballo] was unable to carry out essential duties of his position[,] it had an affirmative duty

15  [under FEHA] to engage in a timely, good faith interactive process with [Carballo] and his

16  medical providers to determine whether [Carballo] could be accommodated in another job

17  position at Comcast or whether he could be accommodated in his current position with

18  Comcast."  (See FAC ¶ 38.)  Carballo alleges Comcast violated FEHA by "fail[ing] to

19  engage in any good faith interactive process with [Carballo] or his physicians to determine if

20  [Carballo] could be reasonably accommodated in any job position with Comcast."  (See

21  FAC ¶ 39.)

22      Pursuant to FEHA, it is unlawful for an employer "to fail to engage in a timely, good

23  faith, interactive process with the employee or applicant to determine effective reasonable

24  accommodation, if any, in response to a request for reasonable accommodation by an

25  employee or applicant with a known physical or mental disability or known medical

26  condition."  See Cal. Gov't Code § 12940(n).  "The employer's obligation to engage in the

27  interactive process extends beyond the first attempt at accommodation and continues

28  when the employee asks for a different accommodation or where the employer is aware

1    that the initial accommodation is failing and further accommodation is needed."  Scotch v.

2    Art Institute of California-Orange County, Inc., 173 Cal. App. 4th 986, 1013 (2009) (internal

3    quotation, alteration, and citation omitted).

4            Comcast argues it is entitled to summary judgment because Carballo cannot show

5    he requested an accommodation that Comcast did not consider.  See Department of Fair

6    Employment and Housing v. Lucent Technologies, Inc., 642 F.3d 728, 743 (9th Cir. 2011)

7    (finding defendant entitled to summary judgment on claim alleging failure to engage in

8    interactive process, where plaintiff "failed to bring to [employer's] attention any possible

9    accommodations it had not considered").  As discussed above, it is undisputed that

10   Comcast, in response to Carballo's request for intermittent leave, as supported by his

11   treating physician, did provide Carballo with his requested accommodation.

12           In his opposition, Carballo argues that when, on December 3, 2012, he told his

13   supervisor, Chandler, that he was experiencing pain from gout, Chandler should have

14   understood him to be asking for an accommodation, specifically, to be assigned only tasks

15   that require "underground work."  (See Pl.'s Opp. at 10:19-20, 25-26.)  Assuming,

16   arguendo, a trier of fact reasonably could find Carballo's statement to Chandler constituted

17   a request for an accommodation different from his existing accommodation of intermittent

18   leave, Carballo nonetheless fails to create a triable issue of fact.  To establish a claim for

19   failure to engage in the interactive process, the "employee must identify a reasonable

20   accommodation that would have been available at the time the interactive process should

21   have occurred."  See Scotch, 173 Cal. App. 4th at 1018.  For the reasons discussed above

22   with respect to Carballo's claim for failure to accommodate, a request to receive

23   assignments that did not require aerial work is not a reasonable accommodation, as it

24   would entail elimination of an essential function of the System Technician position, and

25   Comcast had already engaged in an interactive process with Carballo, which resulted in

26   the mutually acceptable, reasonable, and, indeed, physician-recommended

27   accommodation that Carballo not work on the days he determined he was unable to

28   perform his duties.

1    Accordingly, Comcast is entitled to summary judgment on the Fourth Cause of

2    Action.

3    **C.  Disability Discrimination**

4        In the Second Cause of Action, Carballo alleges that "Comcast fired [Carballo]

5    because of . . . limitations placed upon [him] due to his disability," in violation of FEHA.

6    (See FAC ¶ 25.)  Comcast argues it is entitled to summary judgment because it had a

7    legitimate and nondiscriminatory reason for terminating Carballo's employment, and that

8    Carballo lacks evidence to support a finding that the termination was on account of

9    Carballo's disability.

10       **1.  Relevant Facts**[13]

11       Comcast is regulated by "numerous government agencies, including the

12   Occupational Safety & Health Administration" ("OSHA")  (See Silvey Decl. ¶ 5.)  OSHA

13   "mandates that Comcast implement and enforce various safety rules and requirements,"

14   including a rule that when employees "utiliz[e] a bucket truck to gain access to a worksite

15   above ground[,] employees are required to use hard hats, lanyards that connect them to

16   the bucket trucks, and safety harnesses."  (See id.)  "Comcast could face strict penalties for

17   any violation."  (See id.)  Carballo received training from Comcast about how to use a

18   harness and acknowledges he was instructed to have all the straps attached while

19   performing aerial work.  (See Carballo Dep. at 198:23 - 199:5.)

20       On August 8, 2012, Carballo used a bucket truck in "responding to an escalating

21   problem with an outage," and, in haste, "ascended the aerial lift without wearing [his] safety

22   equipment."  (See Carballo Decl. ¶ 21.)  Carballo was not experiencing any symptoms from

23   gout on that date.  (See Carballo Dep. at 278:25 - 279:2.)  Matt Silvey ("Silvey"), who at the

24   time was Comcast's Network Manager for the West Bay, observed Carballo "operating a

25   bucket truck without a hard hat, connecting lanyard or safety harness."  (See Silvey Decl.

26   ¶ 7; see also Carballo Dep. at 278:3-20.)  Carballo told Silvey that he had forgotten to wear

27

28       [13]The following facts are undisputed, or, to the extent disputed, are stated in the light
     most favorable to Carballo.

13

1  the safety equipment.  (See Carballo Dep. at 281:24 - 282:5.)  Silvey thereafter suspended

2  Carballo without pay for three days.  (See Silvey Decl. ¶ 7; Carballo Decl. ¶ 21.)  In a form

3  titled Employee Development Record, completed by Silvey in connection with the three-day

4  suspension, Carballo was advised as follows:  "Any repeated violation of this nature, or of

5  any other Company rules, policies, procedures, etc. may subject you to further corrective

6  action up to and including termination."  (See Carballo Dep. Ex. 9 (COM000665); Silvey

7  Decl. ¶ 7.)

8       On December 3, 2012, as discussed above, Carballo's supervisor, Chandler,

9  observed Carballo using an aerial lift while the leg straps of his harness were not attached.

10  (See Carballo Dep. 199:12-18.)  At that time, Chandler did not mention anything about the

11  manner in which Carballo had used the harness, but later in the day, Chandler telephoned

12  Carballo at work and advised Carballo that he had talked to Comcast's "safety coordinator."

13  (See id. at 202:2-15.)  During that telephone conversation, Chandler asked about

14  Carballo's gout, and Carballo responded, "Oh, it's getting better."  (See id. at 221:24.)

15  Carballo also "mentioned to [Chandler] about the straps," and Chandler stated, "If you're

16  sick and you need to go home, you can go home."  (See id. at 221:5-10.)

17       The next day, December 4, 2012, after Carballo had arrived at the office, Silvey and

18  Chandler stated they needed to speak with him.  (See id. at 222:21-24, 222:15-25.)  About

19  twenty minutes later, Carballo, accompanied by a shop steward, met with Silvey and

20  Chandler.  (See id. at 224:8-24.)  At the meeting, Silvey advised Carballo, "We're going to

21  do an investigation because [of] the straps you didn't have [on] yesterday."  (See id. at

22  225:11-15.)  When Silvey asked Carballo why he didn't have the leg straps connected,

23  Carballo responded that he had a "flare of gout."  (See id. at 225:15-20.)

24       Ten days thereafter, on December 14, 2012, Silvey asked Carballo to meet with him

25  in the office.  (See id. at 229:3-14.)  After his shop steward arrived, Carballo went to see

26  Silvey, who advised Carballo that Comcast had conducted an investigation and had

27  decided to terminate his employment.  (See id. at 234:1 - 235:5.)  Silvey then gave Carballo

28  a termination notice (see id. at 235:6-11), which stated as follows:

14

On Monday, December 3, 2012, Will Chandler (Supervisor) was responding to a 3-hour outage escalation in South San Francisco.  He arrived to the work site at approximately 11:30 a.m.  As Will drove down the 200 block of Conmur Street he observed Nelson Carballo using his aerial lift to work on the overhead amp located at 250 Conmur Street.  Nelson was wearing the required safety harness and lanyard, but the lower legs straps were not attached as required.  Will observed Nelson working without the lower legs straps attached for more than 10 minutes, the time it took Will to park his vehicle and make contact with Nelson.

On Tuesday, December 4, 2012, in the Burlingame office, Nelson was interviewed about the matter by Will Chandler and Matt Silvey (Manager) and witnessed by Shop Steward Joel Sawacki.  When Nelson was asked why he did not have his harness properly attached, he indicated that his gout was acting up and that having the harness properly connected caused uncomfortable pressure on his leg.  During the interview, Nelson acknowledged that not having the harness properly attached would defeat its function and endanger his own safety.

The expectation to properly use the safety harness and lanyard was covered with Nelson during the Bucket Truck Fall Protection training conducted on January 18, 2012.  Nelson completed his aerial lift certification on October 13, 2011 where the expectation to properly use the harness and lanyard was thoroughly covered.  In addition, Nelson had a similar incident on August 8, 2012 where he did not wear his harness while performing aerial work.  Due to this incident[,] the expectation to properly use his harness was covered during the interview on August 9, 2012. . . . .

Due to your repeat safety violations[,] your employment with Comcast is being terminated Friday, December 14, 2012.

(See id. Ex. C (COM000666).)

## 2. Legal Analysis

Pursuant to FEHA, it is unlawful for an employer, "because of . . . physical disability, . . . to discharge the person from employment."  See Cal. Gov't Code § 12940(a).

"A prima facie case of disability discrimination under FEHA requires the employee to show he or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability."  Nealy, 234 Cal. App. 4th at 378.  "Once the employee establishes his or her prima facie case, the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action."  Id. (internal quotation and citation omitted).  "The employee may still defeat the employer's showing with evidence that the stated reason is pretextual, the employer acted with discriminatory animus, or other evidence permitting a reasonable trier of fact to conclude the employer intentionally discriminated."  Id.

1     Comcast argues that it terminated Carballo's employment for a legitimate,

2  nondiscriminatory reason, specifically, his second violation of Comcast's safety rules while

3  using aerial equipment, as described in the above-quoted termination notice, and that

4  Carballo lacks evidence to establish the stated reason is pretextual.

5     As discussed above, Comcast is required by OSHA to enforce safety rules

6  pertaining to employees' use of aerial equipment and is itself subject to penalties for a

7  failure to do so.  Moreover, it is readily apparent that the above-discussed rule was adopted

8  to protect the safety of workers, such as Carballo.  Carballo argues that a triable issue of

9  fact nonetheless exists as to whether Comcast's reason was discriminatory.  Specifically,

10  Carballo contends he was terminated "because his gout prohibited him from complying with

11  a safety rule" (see Pl.'s Opp. at 24:27-28), i.e., on account of his disability.

12     In support of his position, Carballo relies on Humphrey v. Memorial Hospital Ass'n,

13  239 F.3d 1128 (9th Cir. 2001).  In Humphrey, the Ninth Circuit considered claims alleging a

14  failure to accommodate and unlawful discharge, brought under both the Americans with

15  Disabilities Act ("ADA") and FEHA by an employee who was terminated due to an asserted

16  "history of tardiness and absenteeism," see id. at 1133, which conduct the employee

17  contended was caused by a disability, specifically, "obsessive compulsive disorder," see id.

18  at 1131.  The Ninth Circuit found the employee had a triable claim for failure to

19  accommodate, as the employer had failed to provide her a leave of absence.  See id. at

20  1139.  The Ninth Circuit then addressed the termination claim, finding such claim likewise

21  was triable and noting that "[f]or purposes of the ADA, with a few exceptions, conduct

22  resulting from a disability is considered to be part of the disability, rather than a separate

23  basis for termination."  See id. at 1139-40 (internal footnote omitted) (observing "the

24  consequence of the failure to accommodate is . . . frequently an unlawful termination"); see

25  also id. at 1133 n.6 (applying holding to termination claim under FEHA).

26     Humphrey, however, is distinguishable on its facts.  Unlike the employer therein,

27  who declined to provide the employee with a reasonable accommodation in the form of a

28  leave of absence, Comcast did provide Carballo with that very accommodation, which

16

accommodation Carballo declined to use on December 3, 2012.  (See Chandler Dep. at 49:25 - 50:8) (testifying he asked Carballo whether "he felt well enough to perform his job or if he needed to go home" and that Carballo told him, "I can work today").)[14]  Carballo cites to no authority holding that where an employee declines to avail himself of a reasonable accommodation the employer has provided, and thereafter engages in misconduct at the workplace, the employer is prohibited from terminating the employee when the employee then contends the misconduct occurred as a result of the effects of his/her disability.

Indeed, as Comcast correctly points out, to the extent the issue has been addressed, the law is to the contrary.  Specifically, as explained by the Tenth Circuit in an opinion cited with approval in Humphrey, although, "[a]s a general rule, an employer may not hold a disabled employee to precisely the same standards of conduct as a non-disabled employee," it may do so if "such standards are job-related and consistent with business necessity," and "so long as the disabled employee is given the opportunity to meet such performance criteria by reasonable accommodation."  See Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1086 and n.8 (10th Cir. 1997); see also Humphrey, 239 F.3d at 1139-40.  Here, Carballo does not dispute that Comcast's requiring its System Technicians to comply with OSHA-mandated safety rules while performing aerial work is

_____

[14]Similarly unavailing is Carballo's reliance on other cases finding a triable issue where the employee contended his workplace misconduct was caused by a disability, as those cases likewise involved a failure to accommodate.  See Gambini v. Total Renal Care, Inc., 486 F.3d 1087, 1095 and n.2 (9th Cir. 2007) (holding, where employer terminated bipolar employee, who had suggested "various accommodations she thought might reduce the chance of an outburst at work," ADA requires "employers to make reasonable accommodations for disabilities"; noting plaintiff had proposed instruction reading "[a]n employer cannot fire an employee for poor job performance if the poor job performance was due to a mental disability and reasonable accommodation plausibly would have rectified the performance problem"); Dark, 451 F.3d at 1081, 1084, 1090 (holding, given employer's failure to accommodate heavy equipment operator's epilepsy by allowing him to take days off using "accumulated sick leave or unpaid medical leave," employer not entitled to summary judgment where it terminated employee after he "fell unconscious while driving"); Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 872-74 (9th Cir. 1989) (holding, where employee was terminated for "excessive absenteeism" he attributed to "cluster migraines," employee entitled to judgment, as "the record demonstrate[d] that [the employer] could have attempted a reasonable accommodation of [employee's] condition but failed to do so").

1  "job-related and consistent with business necessity," see id., and, as discussed above,

2  Comcast provided Carballo with a reasonable accommodation.

3  **3. Conclusion**

4  Accordingly, Comcast having proffered a legitimate, nondiscriminatory reason for

5  Carballo's termination, and Carballo having failed to raise a triable issue of fact as to

6  whether his termination was on account of his disability, Comcast is entitled to summary

7  judgment on the Second Cause of Action.

8  **D. Failure to Prevent Discrimination**

9  In the Fifth Cause of Action, Carballo alleges Comcast violated FEHA by "fail[ing] to

10  engage in any reasonable steps to prevent discrimination against [him]." (See FAC ¶ 46.)

11  Pursuant to FEHA, it is unlawful for an employer to "fail to take all reasonable steps

12  necessary to prevent discrimination . . . from occurring." See Cal. Gov't Code § 12940(k).

13  Here, the Fifth Cause of Action is in part derivative of the Second, Third, and Fourth

14  Causes of Action (see FAC ¶¶ 43, 46), which causes of action, as discussed above,

15  Carballo cannot establish. The remaining portion of the Fifth Cause of Action is based on

16  Carballo's retaliation claim (see FAC ¶ 47), pleaded as the Sixth Cause of Action, which

17  cause of action, as discussed below, Carballo cannot establish.

18  Accordingly, Comcast is entitled to summary judgment on the Fifth Cause of Action.

19  **E. Retaliation**

20  In the Sixth Cause of Action, Carballo alleges that his "requests for accommodation

21  for his disability [were] protected activities" (see FAC ¶ 52), and that Comcast, in violation

22  of FEHA, "retaliated against [him] due to his protected activity" by "refusing to

23  accommodate [him]," by "refusing to enter into any interactive process," by "treating [him]

24  disparately from non-disabled employees," and by "terminating [his] employment" (see FAC

25  ¶ 53).

26  Pursuant to FEHA, it is an unlawful for an employer to "discriminate against any

27  person because the person has opposed any practices forbidden under [FEHA]." See Cal.

28  Gov't Code § 12940(h). "To establish a prima facie case of retaliation under FEHA," the

plaintiff must establish, <u>inter alia</u>, that "he or she engaged in a 'protected activity.'"  <u>See</u>

<u>Nealy</u>, 234 Cal. App. 4th at 380.  "[P]rotected activity," however, "does not include a mere

request for reasonable accommodation."  <u>Id.</u> at 381.  "Without more, exercising one's rights

under FEHA to request reasonable accommodation does not demonstrate some degree of

opposition to or protest of unlawful conduct by the employer."  <u>Id.</u>

Here, as Comcast points out, Carballo's retaliation claim is wholly premised on his

having requested accommodation for his disability, and, consequently, the claim is not

cognizable under California law.

Accordingly, Comcast is entitled to summary judgment on the Sixth Cause of Action.

**F. Discrimination on Basis of National Origin**

In the Seventh Cause of Action, Carballo alleges that the termination of his

employment constituted discrimination on account of his national origin, Salvadoran, in

violation of FEHA.  (<u>See</u> FAC ¶¶ 60, 62.)

"Under the burden-shifting framework of . . . FEHA, [the plaintiff] must establish a

prima facie case of discrimination in the workplace by demonstrating that he: (1) was a

member of a protected class; (2) performed his job in a competent manner; (3) suffered an

adverse employment action; and (4) the action occurred under circumstances suggesting

discriminatory motive."  <u>Gathenji v. Autozoners, LLC</u>, 703 F. Supp. 2d 1017, 1028 (E.D.

Cal. 2010).  "If [the plaintiff] establishes his prima facie case, the burden shifts to [the

defendant] to rebut the presumption of discrimination . . . . by producing evidence of a

legitimate, non-discriminatory reason for its actions."  <u>Id.</u>  If the employer meets its burden,

"[t]he burden shifts back to [the plaintiff] to establish that [the employer's] stated reasons for

the adverse employment action [were a] pretext for unlawful discrimination."  <u>Id.</u>

Comcast argues it terminated Carballo for a legitimate, nondiscriminatory reason,

specifically, his second violation of a workplace safety rule, and that Carballo lacks

evidence to establish the proffered reason was a pretext for national origin discrimination.

As discussed above with respect to the Second Cause of Action, the Court finds

Comcast's stated reason for the termination was legitimate and nondiscriminatory.  In

19

1  response to the instant motion, Carballo has not addressed this claim in any manner, let

2  alone shown a triable issue of fact exists as to whether Comcast's stated reason was

3  pretextual.

4      Accordingly, Comcast is entitled to summary judgment on the Seventh Cause of

5  Action.

6  **G.  Discrimination on Basis of Race**

7      In the Eighth Cause of Action, Carballo alleges that the termination of his

8  employment constituted discrimination on account of his race, Hispanic, in violation of

9  FEHA.  (See FAC ¶¶ 65, 67.)

10     Comcast again argues it terminated Carballo because of his second violation of a

11 workplace safety rule and that Carballo lacks evidence to establish the proffered reason

12 was a pretext for racial discrimination.  Carballo, as with his claim based on national origin,

13 makes no argument in response.

14     For the reasons stated above with respect to the Second Cause of Action, the Court

15 finds Comcast's stated reason for the termination was legitimate and nondiscriminatory,

16 and, as noted, no showing has been made as to pretext.

17     Accordingly, Comcast is entitled to summary judgment on the Seventh Cause of

18 Action.

19 **H.  Wrongful Termination in Violation of Public Policy**

20     In the Ninth Cause of Action, Carballo alleges his termination was in violation of the

21 "fundamental public policy set forth in [FEHA]."  (See FAC second ¶ 61 (FAC at 25:24-

22 26).)[15]

23     As discussed above, Comcast is entitled to summary judgment on each of the FEHA

24 claims asserted in the FAC.  Accordingly, Comcast is entitled to summary judgment on the

25 Ninth Cause of Action.

26 //

27

28     [15]The FAC includes two paragraphs numbered "61."

1

**CONCLUSION**

2          For the reasons stated, Comcast's motion for summary judgment is hereby

3    GRANTED.

4          **IT IS SO ORDERED.**

5

6    Dated:  September 8, 2015

7                                                          MAXINE M. CHESNEY
                                                           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21